Ladies and gentlemen, please be seated. We have six cases on our calendar this morning, illustrating the diversity of our jurisdiction. The six cases come from six different tribunals. The three argued cases are a patent case from the ITC, a patent case from the District Court, a trademark case from the PTO, and three cases submitted on the briefs which will not be argued, a trade case from the Court of International Trade, a tax case from the Court of Federal Claims, and a veterans case from the Court of Appeals for Veterans Claims. The first argued case will be Organik Kimya v. ITC and Roman Haas and Dow, 2015-17-74, 1833. Ms. Stetson. Good morning, Your Honors, and may it please the Court. My name is Kate Stetson. I represent Organik Kimya. There are two legal questions in this appeal. The first is whether the ALJ and the Commission abused their discretion in ordering the case-ending sanction of termination of the case, of a default judgment. The second question is whether, even assuming that default judgment was appropriate, the ALJ additionally committed error when he refused to take evidence on remedy, which is, of course, a separate proceeding from default. So on the first question, it is black-letter law in this circuit, from Micron and from Genentech, that before a judge, or an ALJ for that matter, can enter a case-ending sanction, the most extreme nuclear sanction available, the judge essentially needs to show his work. There aren't very many areas in appellate law where an appellate court needs to instruct a judge that he or she must show their work, but this is one. That's a little difficult in this case, given the substantial opinion that was issued here by the ALJ, and the fact that you only proposed two alternative sanctions, both of which would have been extremely lenient, and the ALJ specifically addressed those and considered them. Judge O'Malley, I take your point that this is a long opinion, but I think the difference between a long opinion and the judge actually showing his work where it counted is important. If you look at Joint Appendix 192, that's essentially the crux of the judge's conclusion on this point, and what he says is, Organic Chemist Conduct has ostensibly deprived Dow of its ability to pursue its claim. Ostensibly, which is interesting. No sanction short of default is available to return the parties to the position in which they would have been, but there is a difference between stating a conclusion and explaining the conclusion. Okay, well, you're mixing up a bunch of different issues here, and we can get to the question of whether prejudice had to be shown, whether it was a bad faith finding, but with respect to what the ALJ said with respect to alternative sanctions, you proposed two separate sanctions, one of which was this consent order that you wanted the judge to do, and the other is that simply Dr. Prez wouldn't testify. Those are the only two that you proposed. No, I'm not certain that's right, Judge O'Malley. I think what we argued, certainly, is that some lesser sanction other than a flat default judgment would suffice, and there was a whole menu of lesser sanctions. So you're saying it's the ALJ's obligation to consider every single possible sanction, even if you don't propose what they are, that this is a menu the ALJ is supposed to just conjure up? No, well, first of all, it's not a menu that he conjures up. It's in the governing rule, 19 CFR 210.33. And did you ask for anything other than the two sanctions I just outlined? We asked specifically for a lesser sanction other than the default judgment, and I think that the problem with putting the onus on the party to propose specific sanctions is that that, too, I would think would cabin the ALJ's discretion. This is, admittedly, an area in which he has discretion, but what he can't do and the reason that many courts, including this one repeatedly, have reversed judges and ALJs for just this thing is go all the way to the end of the ratchet without explaining why. That doesn't mean, Judge O'Malley, that he needed to essentially test each level of sanction or, as some judges have misunderstood it, impose each level of sanction before he could get to the last one. But what it does mean is that he has to ask himself, essentially try every key in the lock, he does, before he gets to that last sanction. And the reason is that there are, as this court has said again in Micron and Genentech, there are important considerations underlying this whole exercise. And one of them is that governing principle that before you throw a party out of court, you make sure that there's not some other sanction that would suffice to accomplish all of the things that you wanted to accomplish. Well, he did specifically consider your alternative sanction that you wanted to propose a consent order and went into detail about why that was completely unworkable, correct? I think with respect to the consent order, I remember a detailed statement. I think it was in a footnote of his decision as to the difference between the consent order that we sought and the sanction that he wished to impose, yes. Well, no, it's not in a footnote. He addresses it in some detail, as does the commission. But the important point is, as they both said, if you accepted the proposition that you could just destroy documents at will and then at the end say, oh, and we'll just take this consent order, then what you've done is basically give everyone an incentive whenever there's a trade secret case to destroy all of their documents. Judge O'Malley, your statement is also applicable in any other case. In Micron, the defendants there held what this court called a shredding party and disposed of hundreds of boxes of documents, thousands of pounds of documents, and this court reversed the lower court for imposing the dismissal sanction. So I don't think it is the end of the inquiry to say how do we efficiently deter future spoliation because you could make that argument in every single other spoliation case. There has to be another consideration, and the consideration this court looks first to, particularly in ITC cases where you've got that rule, 210.33, is what is the sanction that is necessary to remedy the harm to the faultless party? How do you possibly determine what the scope of the harm is when we have no idea what was in all these destroyed documents? I think the way that you determine it is by asking the question that the court explained in Micron, which is can the party nevertheless prove some element of the case? That's the degree of prejudice discussion that you see in Micron. So the question here in the misappropriation of trade secrets case, I would think we could all agree that there could be a significant adverse inference against organic chemia for the misappropriation element of a misappropriation of trade secrets claim. Then the next question is did Dow have evidence available to it that could help it prove the predicate to that, which is were these 50-odd secrets actually secrets? Mr. Stetson, perhaps you want to address the exclusion order as well. I do, yes. On the exclusion order, if you'll forgive me, can I make one more point on that last, which is the question of prejudice is can Dow still make its case? And where you have a record of hundreds of thousands of pages and expert reports and statements from Dow going to the existence or non-existence of a trade secret and the extent to which Dow kept it secret, those are two elements of the misappropriation claim that clearly would be unaffected no matter what was in those destroyed records. That's the difference. On the remedy issue, it is black-letter law that when default is entered against a party, all that establishes is liability. And then you next have to look to remedy. There are a couple different instances in where that default actually solves the entire remedy equation for you. Those instances are if you have a liquidated damages provision in a contract and you're found defaulted for a breach, if you have a liquidated damages provision in a statute where there's a specific number, or if the complaint asks, and this is a reference that the commission I think makes in its brief, if the complaint asks for a permanent injunction and you offer no evidence against. But here the difference is in all those other cases that we cited, you need to establish something to find the remedy. And so once you've established liability and we've taken that sanction on liability, assuming that it was appropriate, you then move to the question of what remedy. And we were entitled to submit evidence on that point. But the way the commission crafted the remedy, you still can't. I mean the commission set a 25-year bar order, but it specifically wrote into its remedy the opportunity for you to come back and show that in the absence of use of this trade secret information, you would have been able to basically come up to speed with respect to the industry. And so essentially they just sort of reversed the order of doing this. You're right, Judge O'Malley, that it built that into the decision. It's the last page of the commission's brief. It mentions it. I think the reason that it doesn't get more press in the commission's brief is that it's rather an empty solution for organic hemia for two reasons. First, it shifts the burden of proof over from what it might have been. But more importantly, my understanding of that regulation that the commission cites is that it requires new facts or law. And if we are, according to the commission, left to contend in this separate proceeding, that which we wanted to contend in this proceeding, I would imagine the commission might have something to say about that. That's why this existence of this magic solution to the remedy problem actually isn't a magic solution. But the problem is, again, there were so many destroyed documents that the problem is they've said it would be impossible to prove the negative when you were the ones in control of the information and you were the ones who destroyed the information. No, I don't. I'm not sure that that is a full assessment of what the commission's argument on this point is. The commission's argument on the remedy point is, first, we're entitled to do this under 1337G. That's clearly not right because that applies to a defendant who doesn't show up. And a defendant who doesn't show up doesn't get to argue about remedy either because they've been silent. The commission also says in its brief, interestingly, at page 57, this had to do also with the willful misconduct of organic kimya. We have already, under this part of the argument, accepted the idea of the default judgment. At the point where we are talking about remedy, that sanction doesn't get to continue to bleed over into remedy. If it does, we have an independent problem on top of the abuse of discretion problem I already identified, which is that the judge didn't explain why a default judgment plus a 25-year exclusion order was the only thing that could suffice to cure prejudice. But what about the fact that your predecessor counsel agreed below that it would be impossible for organic kimya to prove the absence of prejudice because you didn't have the documents from which to prove the absence of prejudice? I think if Your Honor is referring to the colloquy between prior counsel and the ALJ about relevance, I think there was a colloquy that the prior counsel said, we agree that these documents are putatively relevant. And here we're switching back to the prejudice question. He also agreed that organic kimya could not prove the absence of prejudice in the absence of the documents. So two points. First, I want to make clear that we're toggling back now to the default question. Well, I don't think they're unrelated. But you could try to make that clear if you want, but I don't think the two are unrelated. Okay. Well, on the default sanction, it is also black-letter law in this court under Micron that when you talk about prejudice, even assuming that there is bad faith, by the way, which was found as to one element of this spoliation claim, when you talk about prejudice, the next question you have to ask is the degree of prejudice. And that's why I was making the distinction between what I think we can conceive might be an appropriate adverse inference, which is misappropriation, and the existence of a trade secret and whether it was carefully kept. So that on the liability point is where prejudice comes in. On the scope of the exclusion, prejudice simply has no role for this reason. When you get to an exclusion order, the question that the ITC considers is how long would it have taken organic chemia to develop this purported trade secret in the absence of its misappropriation? And that is the question that we submitted 19 pages of briefs specifically devoted to that question. This is where I say that the two issues are not unrelated, because even if you're talking about a different thing than prejudice, you are talking about a situation in which organic chemia destroyed the ability of their opponent to make certain proofs or to establish certain proofs because they took all of the information and destroyed it. I don't understand how you can say that a finding that says, you know, that even you can't prove the absence of prejudice because you don't know what was in the documents, and say that that is so different from saying that Dow can't prove certain things because they don't know what was in those destroyed documents. I don't mean to prove the absence of prejudice, Judge O'Malley, but what I can establish is the presence of less prejudice as to certain elements of the claim. And as to the exclusion order, here is the thing. Dow submitted an expert report going exactly to this issue. Actually, you do need to prove the absence of prejudice, because where we are is not simply the circumstances in my crime. We're talking about a violation of a specific order. I admit it's not a court order, but it is an ITC commission order requiring discovery, and it's after, in the face of those orders, that the documents are being destroyed. So when you have that and a bad faith finding, it's a different type of analysis. I don't believe it is, Judge O'Malley, and I don't see why it would be a different analysis given the fundamental underpinning of all of these cases, which is that no matter whether you're looking at a violation of a court order or inherent authority, or for our purposes, 210.33, which contains that phrase that says you must order a sanction sufficient to compensate the other side for its harm. Ms. Jensen, your time has just about expired. We'll give you your three minutes of rebuttal time back. Thank you, Judge O'Malley. And we'll hear Mr. Rosenzweig from the commission. Yes, thank you. This case involves the most egregious spoliation that anyone at the commission has ever seen in a commission investigation, including the presiding ALJ. The facts of that spoliation are undisputed and are set forth extensively in the ALJ's opinion, in the commission opinion, and in the commission's brief. I'd like to jump just to a couple of the record citations that Judge O'Malley was just referring to. At A11496, Organic Chemia Council acknowledged that it could not demonstrate the lack of relevance of the documents destroyed here. At Joint Appendix 9192, Organic Chemia acknowledged to the commission  At Joint Appendix A11509-10, the ALJ asked a hypothetical to Organic Chemia Council. What if there were a document on that computer where Dr. Perez acknowledged to the other head of R&D that without Dr. Nene's assistance, Organic Chemia would have never been able to compete in this market? And the response from Organic Chemia Council was sort of like, well, let's just move on. There's no response to that. All of that is good and important, especially with respect to the sanction. But let's jump to the remedy, because there are some concerns here. Shouldn't there have been a separate hearing and evidentiary findings with respect to the remedy? I don't think so, Your Honor. Pursuant to Commission Rule 210.16, in a default case, the allegations in the investigation are taken to be true. And the Commission complied with that rule. And I don't think that there's any real argument here that the Commission complied with that. In Dow's complaint, it asked for a permanent relief. In the 160-page declaration that accompanied its motion for default, it ratcheted that down to 25 years. What counsel on the other side has been arguing are cases from the district courts which deal with damages. And we know from Federal Rule of Civil Procedure 55 expressly that in the district courts, a default doesn't include damages. Now, I've only ever seen one case from a court of appeals that reviews an injunction issued as part of a default judgment. And it's a case that Organic Chemia has relied upon heavily in its opening brief and its reply brief. That's the E360 Insight case from the Seventh Circuit. And that's a very different case. You have the court there saying that the job of the court of appeals and of a district court is to push against a request for injunctive relief because it's an extraordinary remedy. And in that case, there were real problems with the remedy. It prohibited conduct that hadn't even yet been alleged. And also it created First Amendment problems, prior restraints on speech. And the court of appeals sent it back down for further reconsideration. None of that is an issue here. The commission doesn't have injunctive relief. Yes, an exclusion order in many ways looks like an injunction, but it's the commission's ordinary remedy. But the commission, I mean, and I understand that this is an arbitrary and capricious standard that we're talking about with respect to the remedy. But putting aside what happens in district court, isn't it true that the commission always separately considers the liability from the remedy? Ordinarily what happens is the liability is governed, getting into the weeds of the statute. The liability portion, whether there's a violation of Section 337, is judged, has the formal adjudication requirements of the APA. So the ALJ has to consider that always in the first instance. In some cases, ordinarily the ones that go to the length on the merits, the ALJ will make recommended determinations on remedy. The commission will itself independently make its determination on remedy, and the commission will make the first decision as to the public interest. Now in this case, let's be really clear about what Organic Kimya is trying to argue with respect to remedy. It's pushing against all the trade secrets here. It's saying that these aren't trade secrets. It's saying that if these are trade secrets, these would be really easy to prove or to work around. And these are precisely the kinds of arguments that would have come out if this case had gone the full length on the merits. What they're trying to do is to recapture almost everything that they've now We have a default judgment that these trade secrets exist, that these trade secrets were misappropriated, that we also have allegations that are unrebutted and accepted, that Dow has successfully maintained control over these trade secrets for decades. We also have allegations taken to be true, and this is confidential, but it's in the declaration. I think it may be in the complaint too, but it's also in the declaration that accompanied Dow's motion for sanctions about competitors who, frankly, are more savvy than Organic Kimya, who haven't been able to figure this stuff out themselves. And that formed a large portion of the factual basis for the 25-year remedial period. As Your Honor pointed out, the Commission was well within its rights in choosing a remedy here of 25 years and not choosing to spend another year relitigating the trade secrets. When every time Dow tried getting near the trade secrets, you have Dr. Nene taking a sledgehammer to his hard drive, not disclosing that in response to the subpoena, the Perez violation and all of that. We don't feel as though we have to go through any of that ground anymore. If Organic Kimya wants to hire new people and put them in a room, and this happens in the copyright context because copyright requires copying, if they want to hire people who are untainted by all of this and they can demonstrate that they've developed stuff independently, we're willing to listen. And that's exactly what VSCOFAN endorses, and that's perfectly reasonable. What's your response to the argument that somehow that's a shifting of the burden? I don't know how it's a shifting of the burden. We have an adjudged spoliator here, an adjudged misappropriator. It seems perfectly reasonable to put that burden on the party to convince the Commission that its conduct is lawful. Its conduct here was horrendous. As the ALJ found, it diminished everyone who was touched by the experience, and that's true in the proceedings before the ALJ and it's true before the Commission. This is an ordinary remedy from VSCOFAN. This is an ordinary provision in the Commission's remedial orders. Organic Kimya, frankly, if there's any party who's ever going to challenge this type of provision, organic Kimya is the worst possible place to do so compared with every other respondent who doesn't go about destroying its documents whenever you get close to trade secret misappropriation. I have a tiny amount more time. If I could just switch for a moment to lesser sanctions. There's no case in which the amount of discussion provided by the ALJ and the Commission here was ever found to be inadequate. We had a two-day hearing. At the hearing, the ALJ repeatedly asked about lesser sanctions that have any meaning at 11500-01. Again, more about lesser sanctions at 11508. He discussed all of this. Then even the Commission. The Commission found the deterrent value flowing from the factual findings of pervasive discovery abuse underlying the default sanction make the sanction and consent order inherently unequal. We don't believe that there's much merit in this argument. We've heard stuff about prejudice. I don't really understand the role of that here under D.C. Circuit Law. I don't know whether this court applies its own regional circuit law or D.C. Circuit Law. It's one or the other. Under D.C. Circuit Law, you can have default based only on deterrence, as long as it's supported by flagrant or egregious misconduct. And that's certainly the case here. And my one last point would just be that the Commission is perfectly willing to explain the operation of its rules, including Rule 210.33. There are arguments first raised in the reply brief by Organic Chemia that allege that the Commission rule isn't as broad as Rule 37. This court in Genentech, footnote 9, noted that the two are the same. And if this court wants me to discuss the operation of the Commission rule, I'd be happy to do so. Thank you. The Council will hear from Mr. Nimrod Fatal. Good morning, Your Honors. Please support. I'd like to start by addressing the issue of lesser sanctions. The Commission did not just address the consent order in a footnote. They spent two pages from JA 32 to 34 fully addressing whether a consent order would be sufficient. The Commission and the LJA also addressed the issue of whether a lesser sanction such as Perez not being allowed to testify would be sufficient. It clearly is not, given the fact they destroyed 600,000 documents from his computer, given the fact that he was the head of R&D and the points we put forth, it's confidential, on pages 9 and 10 of our brief. There was a statement made by Council that other elements of the trade secret claim of Val would have been unaffected, that all that would have been found on the laptop was documents supporting misappropriation. That argument was rejected by both the ALJ and the Commission. They both found that the laptop could have and likely would have had information going to all of the elements of Val's claims. For example, at page JA 11509-510, which is transcript pages 400-401, the ALJ addressed this issue at the hearing and said, well, a document could have had and went through a list with a hypothetical document. And the other side's council agreed. They didn't dispute that. They couldn't rebut that at all. The Commission addressed the same issue at page JA 35-36. They said an argument was made during the Commission briefing that perhaps the evidence would have only gone to one element, and they rejected that explicitly. They said that there on JA 36, they said that the information there could have gone to whether Dow's trade secrets were kept secret. In fact, were they trade secrets? Did they have value? Because the issue here was the other side had been alleging that somehow you could piece together Dow's trade secrets from 15 patents of Dow and take hundreds of examples and assemble a 50-step trade secret recipe, and that Perez's laptop would have gone directly to the point that, no, what's in the public domain would not allow you to get to Dow's trade secrets. It was crucial evidence. Dr. Perez was the key player, and this was an intentional destruction of the evidence of the key player in the case. Do you agree with me that even if the ALJ had decided that instead of entering default judgment, you should just enter all kinds of inferences against organic chemia, that the result would have effectively been the same? Yes, and the ALJ made that finding at page A193, where he said that even if I just look at adverse inferences, the result's the same, and for the reason I just discussed. If the computer would have likely had something on it to go into all four elements of our claim, then you'd have an adverse inference on 1, 2, 3, 4, and the result is default judgment, which is exactly what the ALJ was saying and the commission was saying when they said, well, your argument is just going to one element. You're wrong. And they went through and addressed the two elements that organic said during commission briefing would not have been found there, and they made a finding squarely rejecting that. So the commission actually and the ALJ did go through, even though there were only two sanctions that were offered up by organic chemia, they went through and they did scroll through it. They said, okay, we're going to look to see if something else would suffice, like an adverse inference, even though that was not proposed by organic. And they said that would not suffice because we'd have to go through and have an adverse inference on all four of the elements, which is the same as a default judgment. And the council read a portion from JA192 about the fact this is only two pages and was reading from a sentence that actually starts with the words, as exhaustively discussed supra. The ALJ said, I'm doing this because what I've just said for the prior 99 pages. He spent in those pages 15 pages alone on organic's bad faith. That's JA163 to 179. Thirteen pages on the relevancy of the destroyed documents and the prejudice to doubt, JA179 to 192. The commission at JA34 to 36 went through the same analysis and they both concluded that we made plausible concrete suggestions going to all of our trade secret elements of our claim. So the result should be the same here, whether or not you say we're limited to remedy the prejudice, because the prejudice to doubt went to all four of the elements, so therefore it would be default judgment. But, of course, that shouldn't be the result. You could only look at prejudice. You can't have a party come in and destroy documents. This is worse than Micron. A judge said, I want you, an administrative law judge, said, I want you to produce this document. There's been some monkey business here. You're not producing all your documents. So they went and they looked at the document with a forensic tool, didn't like what they saw, so they did something to delete it, looked again with another forensic tool, still didn't like it, and ran another CCleaner program, it's called, to wipe it out. And then what happens the next time, the ALJ says, okay, now you've got to produce the Strozzi laptop. And in the reply brief, the other side says, well, that's not relevant, because Dow got some of the documents back. But it shows exactly why you can't allow this. The judge said, don't tamper with this, and they destroyed it anyway. And our forensic experts recovered some, but not all. But even if we discovered all of it, you can't allow parties to simply violate court orders by looking and saying, do I like this or don't I? I'll just hit the delete button, and if I do, the worst that's going to happen is I'll get an adverse inference on one element. Now, I would like to address the issue of the remedy, Your Honors. We put in ample proof supporting the 25-year exclusion order. We have an expert who went in, and the commission's instructions to both parties was very clear. They said, don't come and argue about whether there's trade secrets. Let us know what the exclusion order should be, assuming that the trade secrets were found. And that's part of the question they presented. And our expert came in and said, well, based on the fact these trade secrets are here, it would take 15 to 25 years. And they don't dispute that the evidence supports a 25-year exclusion order. What they're saying is that they should have been allowed to come in and argue there were no trade secrets. And it really makes no sense, because if there's a default judgment, it's supposed to be the same as if we'd won on the merits. And if we'd won on the merits, they would be able to come in at the remedy phase and say, well, let's just assume there's no trade secrets. Let's re-argue that again. The default judgment had no teeth whatsoever. You have to start with the presumption then that if there's a default judgment that is going to the merits, then the trade secrets were found, they're valid, you can't get to them, and you can't have your expert come in then and go through paragraph after paragraph, which is what he did, saying, well, this isn't a trade secret, that's not a trade secret, and that's not a trade secret, and therefore the exclusion order should be zero to two years. And the commission allowed them to put in briefing on it, and they didn't follow what they said. The commission said at J37 and 38 that organic chemistry is challenged to the scope of the exclusion order is based on whether any and all trade secrets were unknown to the public and would be difficult to design around. These all go to the merits, which organic chemistry has waived by default. So there might be an issue in some other case about whether if someone defaults, they should get to put in some evidence or not, but here you don't even need to resolve it because they didn't put in the right evidence. They put in zero, nothing on the actual evidence, the issue, which would have been, assume the trade secrets are there, how long would it have taken to design around? They put nothing in on that. Thank you, Your Honors. Thank you, Counsel. Ms. Stetson will give you three minutes of rebuttal time if you need it. Thank you, Judge O'Leary. Three quick points on remedy. The first is Mr. Rosenzweig drew a distinction between an injunction and damages. That's not the right distinction. The distinction for these purposes is, is the remedy fixed or is it variable? And here you had evidence, and I can get to that last point, ranging from 2 to 25 years about the appropriateness of the scope of the exclusion order, and the ALJ again went to the very end of the line. Now, interestingly, what Mr. Rosenzweig said also was, we have an adjudged spoliator here as part of his justification for the remedy, but again, that introduces a comment that I made earlier, which is that to the extent that sanction is infecting the remedy, that is completely inappropriate. What the court should, what the ALJ should have permitted is for Organic Chemia to submit evidence on the remedy. And on that last point... But it's not... I mean, you just heard Mr. Nimrod address that very issue, which is, it's not a question of whether as a spoliator you get punished with a longer remedy. It is a question of having established that there were trade secrets that had been stolen, because that's what the default judgment says, that that's where you start with respect to considering the remedy, correct? That's correct. But both Mr. Nimrod and Mr. Rosenzweig, unfortunately, have misapprehended our remedies argument. Our remedies argument, and you can see this at Joint Appendix 13, 436 through 56, so 19 pages of argument, titled, The length of the exclusion order should not exceed the time it would take to independently develop the misappropriated trade secrets. And what evidence did you present on how you could independently develop the misappropriated trade secrets? The evidence at those 19 pages of argument and the expert report that went along with it. The problem was saying... And actually, Mr. Rosenzweig said something very curious. Right after he said, Organic Chemia is just saying these aren't trade secrets, he then went on to do something very helpful to you, which is that he articulated all the things that don't matter for the scope of the remedy. He said, do the trade secrets exist? Yes or no. Did Dow keep control of them? Yes or no. Were they misappropriated? Yes or no. All of those things, we admit, are off the table when it comes to the scope of the remedy. What's on the table is how long it would have taken us to develop those things in the absence of the misappropriation, and that's exactly the evidence that this ALJ did not permit us to bring in. That is the deficiency. Not that we were trying to retry the whole case. We were not. Nothing, particularly at those 20 pages, let us put on evidence about the scope of the order, and the ALJ and the Commission, citing again our misconduct, turned us down. That's the problem with the remedy. If there are no further questions. Thank you, Ms. Stetson. We'll take the case under advisement.